**David M. Schoeggl**, OSB No. 050317
schoeggld@lanepowell.com
**LANE POWELL PC**
1420 5th Avenue, Suite 4200
PO Box 91302
Seattle, Washington 98101
Telephone: 206.223.7383
Facsimile: 206.223.7107

**Hans N. Huggler**, OSB No. 144993
hugglerh@lanepowell.com
**LANE POWELL PC**
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**DR. HERBERT SEMLER and SHIRLEY SEMLER, individuals,**

Plaintiffs,

v.

**CHARTIS PROPERTY CASUALTY COMPANY, a Pennsylvania company,**

Defendant.

Case No. 3:18-cv-00624-AC

Defendant Chartis Property Casualty Company's
MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56

Oral Argument Requested

## I. LR 7-1 CERTIFICATE OF COMPLIANCE

Counsel for defendant AIG Property Casualty Company ("AIGPCC"), formerly known as Chartis Property Casualty Company, certifies that they conferred with plaintiffs' counsel to resolve the issues raised by this motion, and that the parties were unable to do so.

## II. INTRODUCTION AND MOTION

Plaintiffs Herbert and Shirley Semler are suing their property insurer, AIGPCC, for refusing (correctly) to pay for the remodeling of their beach house. But the Court should never reach the merits of that dispute, because the Semlers have ignored and violated the time limit for lawsuits against AIGPCC contained in their insurance contract, rendering this suit invalid. On that basis, the Court should grant summary judgment to AIGPCC and dismiss this suit with prejudice.

Water from a cracked pipe in an upstairs bathroom damaged the Semlers' Gearhart, Oregon beach home on June 5, 2012. AIGPCC responded promptly to the reported loss, dispatching an independent adjustor within days and paying more than $53,000 to the Semlers by July 30, 2012 to repair the Property. For more than a year after that payment, no communications passed between the Semlers and AIGPCC.

In early 2014, the Semlers presented AIGPCC with additional claims for coverage, including a contractor estimate for remodeling parts of their home. AIGPCC again dispatched an independent adjustor who interviewed the Semlers' contractor and worked with the Semlers' broker to document non-structural losses. Based on the adjustor's report, AIGPCC paid more than $10,000 in additional coverage for repairs and other losses, which it told the Semlers was a "final supplemental payment." On November 3, 2014, AIGPCC informed the Semlers and their broker that "we have paid what we owe for the structure repairs" and that "as of now, our settlement stands." AIGPCC received no response to that message.

For the next two and a half years, the Semlers did not contact AIGPCC. Then, in July 2017, the Semlers presented a new $150,000 lump-sum estimate their contractor characterized as work "[t]o remodel kitchen and have powder room and laundry room on the same floor,"

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

demanding coverage. AIGPCC again dispatched an adjustor who met with the Semlers' contractor and confirmed that the Semlers' proposed construction work went far beyond returning the home to its pre-damaged condition. AIGPCC accordingly denied the Semlers' claim for additional coverage and denied their demand for an inapplicable arbitration process to contest AIGPCC's decision. This suit followed.

The Semlers' policy limits their time to bring suit against AIGPCC after a loss, either pursuant to the limitation written in the contract or through language "read in" to the contract pursuant to ORS 742.240. Under the former, the Semlers' time to sue expired on December 3, 2015, while under ORS 742.240 their time to sue passed no later than November 3, 2016 (and likely well before). In either event, the Semlers' April 2018 suit was filed long past the limit and is therefore invalid. Accordingly, pursuant to Federal Rule of Civil Procedure 56 AIGPCC moves the Court to enforce the contract's suit limitation, grant summary judgment in AIGPCC's favor, and dismiss this suit with prejudice.

## III. FACTS

### A. The Policy.

This suit arises out of a claim for water damage by insureds Herbert and Shirley Semler on AIGPCC Policy No. 0009839539 (issued under AIGPCC's prior "Chartis" service mark). (Declaration of Kathleen Spinella ("Spinella Decl.") ¶ 2, Ex. 1 ("the Policy").) The Policy insured the Semlers' Gearhart, Oregon beach home ("the Property"). The Policy obligates AIGPCC to pay "reconstruction costs" for covered damage to the Semlers' dwelling and "replacement costs" for covered losses to contents of the dwelling. (*Id.* at 1, 7 (Part II.B.1.) The Policy defines "reconstruction cost" as the lesser amount (at the time of loss) required to "restore or repair a structure" or "replace or rebuild a structure" with "materials of like kind or quality." (*Id.* at 7 (Part I).)

The Policy also contains a suit limitation provision. In relevant part, the provision states:

> No action shall be brought against us unless the insured person has complied with this policy's provisions * * *. You also agree to bring

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

> any action against us within one year after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of loss has been determined.

(*Id.* at 18 (Part IV.L).)

**B. The 2012 Loss and Claim.**

On June 5, 2012, a pipe in the Semlers' upstairs bathroom cracked, leaking water that damaged the bathroom and the kitchen and pantry below it. On June 6, 2012, the Semlers reported their loss to AIGPCC, which dispatched independent adjustor Trevor Winter to assess the claim. (*Id*. ¶¶ 3-4.) Mr. Winter personally inspected the Property, met with the Semlers, and spoke with a contractor the Semlers were considering using to repair the water damage to the Property. (*Id*. ¶ 4.)

On July 30, 2012, AIGPCC issued payment on a loss of $58,493.80, made up of the cost of "emergency services" and an estimate of the Property's reconstruction cost. (*Id*. ¶ 5, Ex. 2.) The letter accompanying payment concluded that "if [the payment amount] appears to be incorrect or you have any other questions or concerns, please contact [AIGPCC] to discuss so that we may resolve any misunderstandings promptly." (*Id.*) The Semlers cashed AIGPCC's payment check on August 8, 2012. (*Id.* ¶ 5.) Between June 30, 2012 and April 2014, there were no communications between AIGPCC and the Semlers. (*Id.* ¶ 6.)

**C. The 2014 Additional Claims and Final Settlement.**

In April 2014, the Semlers' insurance broker presented AIGPCC a $5,700 invoice for "concept design" regarding "Gearhart Improvements." AIGPCC requested additional information from the designer to determine if the expense was covered loss under the Policy, but was rebuffed. (Spinella Decl. ¶ 7, Ex. 3.) AIGPCC requested information from the Semlers that might demonstrate that the invoice was a covered expense, but the Semlers never provided further information. (*Id.*)

On April 23, 2014, adjustor Trevor Winter met with the Semlers and their broker regarding their proposed construction at the Property. The Semlers informed Mr. Winter that they were in

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

the process of selecting a new contractor, and Mr. Winter advised that he would review the repair estimate submitted by that contractor. (Spinella Decl. ¶ 8.) In late August 2014, Mr. Winter received an estimate for proposed construction work prepared by the Semlers' new contractor, Greg Larson Construction. After an in-person consultation with Mr. Winter and a walk-through of the Property, Greg Larson Construction issued a revised estimate for repair in the amount of $56,748. (*Id.* ¶ 9, Ex. 4.) Mr. Winter then issued his revised estimate of costs of repair at $53,989.36. (*Id.* ¶ 10, Ex. 5.)

On October 9, 2014, AIGPCC issued a "final supplemental payment" of $6,008.69 to the Semlers for the revised cost of structural repairs and living expenses, food loss, and loss of an oriental rug. (Spinella Decl. ¶ 11, Ex. 6.) Along with the closing letter to the Semlers, AIGPCC sent the Semlers' broker detailed documentation of the settlement's basis, stating:

> Please review this with Dr. Semler as we have issued our settlement check. We believe the settlement is fair and are under the impression the insured contractor will agree to the final estimate attached. Please see our closing letter. Thank you very much for your assistance with the insured.

(*Id.* ¶ 11, Ex. 7.)

The Semlers, through their broker, raised several questions regarding the settlement, and AIGPCC identified additional amounts owed for clean-up work at the Property immediately after the 2012 loss. (Spinella Decl. ¶ 11, Ex. 8 at 4-5.) Accordingly, AIGPCC issued a revised supplemental payment of $10,632 on October 24, 2014. (Spinella Decl. ¶ 11, Ex. 8 at 4.) The Semlers' broker responded that the Semlers were "not satisfied with the settlement as it will not be enough to complete the work to repair the home" and asked that AIGPCC "advise what documentation is needed in regard to the architect fees he has paid." (*Id.* at 4.)

In a November 3, 2014 email to Herbert Semler and the Semlers' broker, AIGPCC responded:

> **We have paid what we owe for the structure repairs**. **The below amounts would be enough to complete the work to the home to put it back to the condition it was prior to the loss happening.** The insured's contractor has written an estimate that was to remodel

> the kitchen and bathroom, not repair it. We only owe to put the dwelling back to its original condition when the loss occurred on June 5, 2012.
>
> **Your Architect was not willing to assist in providing what was need [sic] to determine what her billing was for.** Please see her responses. [*See* Spinella Decl. ¶ 7, Ex. 3 for referenced correspondence.]
>
> *** * * ***
>
> When Trevor Winter first met with all and discussed the architect fees, it was explained what was needed to determine if any of their fees would be considered. Trevor asked for copies of the plans or drawings that were completed by the architect to determine if any of them were to depict how the home was prior to the loss or if the drawings/plans were only remodels of the space. No drawings/plans were ever provided to him or to us. No further detail explaining the architects fees have been provided.
>
> The way the invoice reads, it was only rendering remodeling plans, not repair plans. **Based on the damages incurred, there would not need to be an architect involved to complete the repairs to the home to place it back to its original condition**. If anything can be presented to the contrary we will gladly review it.
>
> **As of now our settlement stands**. Thank you.

(Spinella Decl. ¶ 12, Ex. 8 at 1 (emphasis added).)

AIGPCC received no response to its November 3, 2014 email. (Spinella Decl. ¶ 12.) The Semlers did not contact AIGPCC again for more than two and a half years. (*Id.* ¶ 13.)

### D. The 2017 Claim and Request for Appraisal.

On July 19, 2017, the Semlers' broker presented AIGPCC with a $150,000 contractor estimate for construction at the Property, demanding coverage. The contractor described the proposed work as:

> To remodel kitchen and have powder room and laundry on same floor. We have to remove lower laundry room and most of a [sic] upper bed room to make this work according to drawing supplied by owner, and save the tile in upper bath, shower.

(Spinella Decl. ¶ 14, Ex. 9.) AIGPCC again engaged Mr. Winter, who met with the Semlers and their contractor at the Property to go over the proposed work. (Spinella Decl. ¶ 15.) Mr. Winter submitted a report setting out his meeting and summarized his assessment that:

> In summary the insureds [sic] newest contractor was unaware that this had been an insurance claim. The contractor wrote his proposal based on the architects drawings that were submitted to him. He is

> willing to prepare another estimate to replace what the insured had existing. The insured was upset at the idea of me providing the photos of what their home looked like right after the accident. I would recommend sending the photos to the insured and request that he provide them to his contractor should he desire to do so. The insured believes that he has the ability under the policy to rebuild however he desires. I believe he is referring to the Declarations page where is [sic] states the Payment Basis is Guaranteed Rebuilding Cost. He is confusing rebuilding with remodeling. His plans drawn up by his architect are to remodel the kitchen and upper bathroom. It is not to put it back how it was prior to the loss. He seems to believe he is entitled to the full amount of his policy if he sees fit since he has been paying premium all these years.

(*Id.* ¶ 15, Ex. 10 at 4.) Based on Mr. Winter's report, AIGPCC denied the Semlers' claim for additional coverage on August 24, 2018. (*Id.* ¶ 16, Ex. 11.) AIGPCC denied the Semlers' subsequent invocation of an inapplicable appraisal procedure provided for in the Policy on September 21, 2017. (*Id.* ¶¶ 17-18, Ex. 12.) On April 13, 2018, the Semlers filed this suit.

## IV. LEGAL STANDARD

A court must grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of showing no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, Inc., 477 U.S. 317, 322-23 (1986). Where the non-moving party will bear the burden of proof at trial, the moving party may meet its burden by pointing out the absence of evidence in support of the non-moving party's case. *Id.* at 325.

If the moving party meets its burden, the non-moving party must set forth specific facts demonstrating the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56(e)). The non-movant, however, may not escape summary judgment by bald assertions or pointing to shreds of evidence. A "non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The ultimate question on a motion for summary judgment is whether reasonable minds could differ as to the import of evidence. *Eisenberg v. Ins. Co. of North Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987) (citing Anderson, 477 U.S. at 250). "If the evidence is merely colorable * * * or is not significantly probative, summary judgment may be granted." *Id*. (quoting *Anderson*, 477 U.S. at 249-50).

## V. ARGUMENT

### A. Insurance Contract Suit Limitation Provisions Are Enforceable and Favored.

Oregon law permits contracting parties to agree to limit the time to bring actions arising from a contract to less than the applicable statute of limitations, so long as the agreed-on limitation is reasonable. *Beck v. General Ins. Co.*, 141 Or. 446, 456 (1933); *see Garrison v. Bally Total Fitness Holding Corp.*, 2005 WL 3143105, *2 (D. Or. Nov. 23, 2005) (Haggerty, J.) (rejecting assertions that eighteen-month limitation period in insurance contract was unreasonable).

Time limits for bringing suit are favored in homeowners' insurance contracts—indeed, Oregon requires them. ORS 742.240; *Herman v. Valley Ins. Co.*, 928 P.2d 985, 987 n.1 (Or. Ct. App. 1996). In *Herman*, the Oregon Court of Appeals noted:

> Suit limitation provisions * * * enable an insurer to fix its present and future liabilities and to close stale claim files. Without such a limitation provision, an insurer could not accurately forecast its future liabilities, set aside proper reserves, or close even ancient claim files.

*Id.* at 991. Here, AIGPCC faces exactly the problem recognized in *Herman*. The Semlers' loss occurred in 2012, with AIGPCC completing the adjustment process and notifying them of final payment in 2014. (Spinella Decl. ¶¶ 3-12, Exs. 6-8.) For more than two and a half years after that, the Semlers sat on their rights and were silent. (*Id.* ¶ 13.) They then claimed additional loss and, after AIGPCC investigated and determined no additional coverage was owed, now sue on a six-

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

year-old loss. The Court can and should enforce the applicable limitations provisions and grant summary judgment to AIGPCC.

**B. The Semlers' Suit Violates the Policy's One-Year Suit Limitation Because It Was Filed After December 3, 2015, and AIGPCC Is Entitled to Judgment as a Matter of Law.**

The Policy contains a suit limitation that provides:

> You [the insured] * * * agree to bring any action against us within one year after a loss occurs, but not until thirty (30) days after proof of loss has been filed and the amount of loss has been determined.

(Spinella Decl. Ex. 1 at 18 (Part IV.L).) Courts interpreting this provision have held it provides an insured with a year to bring suit, with time beginning to run upon determination of "the amount of loss." *See Majagah v. AIG Prop. Cas. Ins. Agency, Inc.*, 2016 WL 475362, *3 (D. N.J. Feb. 8, 2016). Therefore, to determine how to apply the limitation here, the Court must determine from the record when AIGPCC "determined" the "amount of loss." The Court should hold the loss was determined no later than November 3, 2014—the date AIGPCC told the Semlers that "as of now, our settlement stands." (Spinella Decl. Ex. 8.)

The Policy does not define at what point the "amount of loss has been determined." In *Majagah*, which dealt with similar facts and an identical provision, the District of New Jersey held:

> Although the policy does not define when "the amount of loss has been determined," the only reasonable interpretation is that the loss has been determined at the point when "the insurance company has made an offer to settle or has denied the claim." *See Erlichman v. Encompass Ins. Co.*, 791 N.Y.S. 2d 869 (Sup. Ct. 2004); *see also Secord v. Chartis Inc.*, No. 09 CIV. 9934 SAS FM, 2011 WL 814743, at *3 (S.D.N.Y. Mar. 7, 2011). This understanding of the limitation provision is reasonable insofar as it provides Defendant with an opportunity to determine the amount of any covered loss to the insured before a lawsuit may be filed, while also allowing the insured a full twelve months in which he or she could file a lawsuit. *See Erlichman*, 791 N.Y.S.2d 869; *Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 520 (1970).

2016 WL 475362, *3 (emphasis added).

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

*Majagah* is on all fours with the facts here. In *Majagah*, the insured's pipes froze and burst on May 11, 2013, causing water damage. AIG denied coverage of the insured's claim on October 14, 2013 and, after the insured requested further review, denied coverage again on May 15, 2014, stating "[n]o further payments will be made on this claim." *Id.* at *1. The court held that, based on its interpretation of the Policy's limitation period:

> [T]he loss from the water damage to Plaintiff's home was determined, at the latest, on the date when Defendant denied Plaintiff's claim for the second time. In other words, as of May 15, 2014, Defendant determined the amount of loss for Plaintiff's water damage (i.e., the amount of covered loss) to be $0. As such, this Court finds that Plaintiff's claim expired under the terms of the limitation provision before July 6, 2015 (the date on which Plaintiff filed his Complaint), and Plaintiff's Complaint must, therefore, be dismissed.

*Id.* at *3. The court rejected the insured's argument that the amount of loss could not be determined until his home repairs were substantially complete, noting with disapproval that the insured's interpretation "would give Plaintiff complete control over when a loss is 'determined' since it would depend on the pace at which Plaintiff completed the repairs." *Id.*

Here, the Semlers promptly reported their loss to AIGPCC, which adjusted the claim and issued payment based on cost estimates of repair. (Spinella Decl. ¶¶ 3-5, Ex. 2.) Two years later, the Semlers selected a new contractor and sought additional coverage. After investigation by AIGPCC, including an adjustor meeting with the Semlers' contractor, AIGPCC paid an additional $10,362.82, which it denoted as a "final supplement check." (*Id.* ¶¶ 7-12, Exs. 6, 8.) Shortly thereafter, on November 3, 2014, AIGPCC stated:

> We have paid what we owe for the structure repairs. The below amounts would be enough to complete the work to the home to put it back to the condition it was prior to the loss happening. The insured's contractor has written an estimate that was to remodel the kitchen and bathroom, not repair it. We only owe to put the dwelling back to its original condition when the loss occurred on June 5, 2012.

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

> * * * *
> [Omitted discussion of why architect invoice was not covered loss and what existing documents might change that determination.]
>
> As of now our settlement stands. Thank you.

(*Id.* Ex. 8 at 1.)

The Semlers did not respond to that email. Nor did AIGPCC otherwise hear from the Semlers for the next two and a half years. Rather than promptly make repairs to the Property, the Semlers delayed and sat on their rights. Not until July 2017, more than five years after the date of loss, did the Semlers submit a new $150,000 remodel estimate for construction work that still had not occurred. Like in *Majagah*, with this suit the Semlers are asserting they can delay closure of their claim indefinitely by delaying repairs and making successive claims for coverage. Like in *Majagah*, the Court should reject that proposition.

In summary, on November 3, 2014, AIGPCC unambiguously communicated to the Semlers that it had determined the amount of structural loss for which it owed coverage and had paid the Semlers in settlement of that amount. This was the date that "the amount of loss [was] determined" under the Policy. Applying the thirty-day waiting period and the one-year limitation period within the Policy, the deadline to file suit against AIGPCC was December 3, 2015. This suit was filed on April 13, 2018. Accordingly, the Court should grant summary judgment in AIGPCC's favor and dismiss this suit with prejudice.

**C. Alternatively, the Semlers Are Barred from Filing Suit by the Suit Limitation Language Mandated by ORS 742.240, and AIGPCC Is Entitled to Judgment as a Matter of Law.**

**1. If the Court holds the limitation in ORS 742.240 must be "read in" to the Policy, the Semlers are barred from filing suit after June 5, 2014.** Oregon imposes a mandatory two-year suit limitation within "fire insurance" policies, which Oregon courts hold include homeowners' insurance policies. ORS 742.240; *Herman*, 928 P.2d at 987 & n.1. Such policies must include a provision that substantively provides that:

> No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after inception of the loss.

ORS 742.240. In the event that a policy "does not comply with the statute," courts must "construe it to contain any mandatory statutory requirements that it omits." *Olson v. Nat'l Indemnity Co.*, 829 P.2d 716, 717 (Or. Ct. App. 1992). Therefore, "if the limitation period in the policy is ineffective, the applicable limitation is the * * * period" provided for in ORS 742.240. *Id.* The limitation is not subject to a discovery rule. *Moore v. Mutual of Enumclaw Ins. Co.*, 855 P.2d 626, 632–35 (Or. 1993).

AIGPCC does not contest that the Policy's suit limitation provision, as written, could provide a shorter time to bring suit than is required by ORS 742.240. But under the facts of this case, the Policy's suit limitation provides a *longer* time than provided under ORS 742.240, and the Court should hold it enforceable on that basis. *See Ben Rybke Co. v. Royal Globe Ins. Co.*, 651 P.2d 138, 141 & n.2 (Or. Ct. App. 1982) (holding intent of statute was to prevent insurers from imposing a shorter limit than that provided for by the legislature). However, even if the Court holds that ORS 742.240 should be "read in" to the policy, the Semlers' deadline to file suit was June 6, 2014, two years from the date of loss. This suit was filed on April 13, 2018, almost four years later. Accordingly, the Court should grant summary judgment in AIGPCC's favor and dismiss this suit with prejudice.

**2. Even if AIGPCC engaged in conduct warranting tolling the suit limitation provision (and it did not), the Semlers are barred from filing suit after November 3, 2016.** The Semlers assert that "[AIGPCC], through its conduct and statements, * * * induced the Semlers to delay filing this lawsuit and to otherwise comply with any time-based provisions on the Policy." (Compl. ¶ 44.) Oregon law allows that in "proper circumstances, an insurer may be [equitably] estopped from asserting a suit limitation provision as a defense to liability on an insurance policy." *Herma*n, 928 P.2d at 991. "For a plaintiff to invoke the doctrine of equitable estoppel, the

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

insurance company must have done something that amounted to an affirmative inducement that would cause [the] plaintiff to delay in bringing his or her action. Furthermore, there must be justifiable reliance by the party seeking to invoke estoppel, and that reliance must be reasonable." *Brockway v. Allstate Prop. and Cas. Ins. Co.*, 391 P.3d 871, 876 (Or. Ct. App. 2017) (citations and internal quotation marks omitted).

Here, there is no evidence to support equitable estoppel. And even if there were, AIGPCC's notice of final settlement of their claim cut off any basis for estoppel, starting a clock that ran out in November 2016.

**a. There is no evidence on which a reasonable fact-finder could conclude that AIGPCC made a "false representation" intended to induce the Semlers to delay filing suit.** For equitable estoppel to toll the limitation period in ORS 742.240:

> [T]here must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it.

*Brockway*, 391 P.3d at 876 (quoting *Day v. Advanced M&D Sales*, 86 P.3d 678, 682 (Or. 2004)). Plaintiffs cannot establish the first element of estoppel (and, necessarily, any of the others).

There is no evidence that AIGPCC made a "false representation" to the Semlers regarding their right to sue under the Policy, because no such representation was ever made. Plaintiffs allege "[AIGPCC] induced the Semlers into delaying filing a lawsuit by continuing to request information for purposes of resolving the claim and otherwise advising the Semlers that the Claim could be resolved without a lawsuit." (Compl. ¶ 19.) But the Semlers do not allege any such statement with specificity, and the correspondence between AIGPCC and the Semlers is devoid of any direction to the Semlers to delay suit or indication that AIGPCC agreed to toll the time-limitations provision. Fed. R. Civ. P. 9(b) (allegations of fraud must be made with particularity); *cf. Reed v. Commercial Ins. Co.*, 432 P.2d 691, 692 (Or. 1967) ("one seeking the benefit of an estoppel must plead the facts out of which an estoppel arises"). Nor can a false representation be implied from

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

AIGPCC's good-faith investigation of the Semlers' successive claims for coverage. Oregon law expressly bars the consideration of an insurer's investigation of a claim as a basis for asserting estoppel. ORS 742.056. Accordingly, AIGPCC's entirely proper requests that their insured document claimed losses are irrelevant to the estoppel inquiry.

Not only is there no evidence on which a fact-finder could find that AIGPCC made a false representation to the Semlers regarding their rights to sue, there is no evidence of any intent by AIGPCC to delay the Semlers from a legal action nor evidence that the Semlers (represented by an insurance broker) were ignorant of the Policy's terms. *Cf. Union Central Life Ins. Co. v. Kerron*, 264 P. 453, 455 (Or. 1928) (in the absence of fraud to prevent a person from reading their contract a party cannot be held ignorant of its contents). For all these reasons, the Court should hold that estoppel does not apply to toll the two-year limitation in ORS 742.240, grant summary judgment to AIGPCC, and dismiss this suit with prejudice.

**b. Even if AIGPCC engaged in conduct warranting estoppel of the ORS 742.240 limitation, such estoppel ended on November 3, 2014 when AIGPCC notified the Semlers of final settlement.** There is no evidence of conduct by AIGPCC to warrant estoppel. But even if a dispute of fact as to AIGPCC's actions after the loss exists, any ambiguity as to AIGPCC's coverage position vanished on November 3, 2014. On that date, AIGPCC informed the Semlers that its settlement of their claim was final.

Century-old Oregon law establishes that once an insurer repudiates the alleged grounds for estoppel, an insured's time to file suit begins to run. In *Gilbert v. Globe & Rutgers Fire Ins. Co. of the State of New York*, the Oregon Supreme Court held that an adjuster's false statements that a claim would be paid were grounds to estop enforcement of a suit limitation provision, but only until the insurer denied all liability. After the estoppel was removed, the relevant time period ran and barred suit. 174 P. 1161, 1163 (Or. 1918). On rehearing prompted by the plaintiff's protest of the court's application of estoppel law, the court held:

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

> [T]here is a strong line of authorities which hold to the view that such acts of the defendant as are indicated in the present case do not, in the strict sense, constitute a waiver, but a simple case of estoppel, the effect of which is to suspend the time limitation of the contract until the hour when the estoppel is removed by notice to the plaintiff that his claim is repudiated, at which moment the contract limitation again become effective, and gives the plaintiff twelve months from that date in which to begin his action.

*Gilbert v. Globe & Rutgers Fire Ins. Co. of New York*, 178 P. 358, 359 (Or. 1919) (emphasis added).

Here, on October 9, 2014, AIGPCC issued a check to the Semlers that it represented as a "final supplemental payment" on their claim. (Spinella Decl. ¶ 11, Ex. 6.) AIGPCC explained the basis for its calculations and ended by stating "we feel this is a fair settlement." (*Id.*) AIGPCC also communicated to the Semlers' broker that its settlement was final and referred to its "closing letter." (*Id.* ¶ 11, Ex. 7.)

The Semlers responded to AIGPCC with questions regarding their Additional Living Expense coverage, emergency services, structural coverage, and coverage for the "design services" invoice, and AIGPCC responded in detail. (Spinella Decl. ¶ 11, Ex. 8 at 4-5.) AIGPCC also adjusted the final supplemental payment to a total of $10,632.86, correcting an oversight in how expenses were calculated and included in the settlement. (*Id.* at 4.) Regarding the structural coverage, AIGPCC explained:

> We have paid what we owe for the structure repairs. The below amounts would be enough to complete the work to the home to put it back to the condition it was prior to the loss happening. The insured's contractor has written an estimate that was to remodel the kitchen and bathroom, not repair it. We only owe to put the dwelling back to its original condition when the loss occurred on June 5, 2012.

(*Id.* at 1.) Regarding the "design services" coverage, AIGPCC explained that (1) the Semlers' architect had refused to provide information on what services had actually been performed; (2) the documentation needed to reconsider coverage on that item; (3) that Mr. Winter had previously

LANE POWELL PC
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

explained to the Semlers what was needed; and (4) explaining that repairing the damage to the Semlers' home would not normally warrant architectural services. (*Id.*) AIGPCC concluded that "[i]f anything can be presented to the contrary we will gladly review it. As of now our settlement stands." (*Id.*)

As explained above, there is no evidence whatsoever to justify estopping AIGPCC's right to assert the time limit contained in ORS 742.240. (*See infra* § V.2.a.) But even if there were, any possible estoppel was removed by AIGPCC's notice to the Semlers that it was issuing "final" payment, had paid all that was owed regarding the structure, and that its settlement stood. Like in *Gilbert*, on November 3, 2014, AIGPCC repudiated its insureds' claim for coverage beyond what was already paid. 174 P. at 1163; *cf. Majagah*, 2016 WL 475362 at *3 (holding the "only reasonable" date on which to calculate a suit deadline was the date "the insurance company has made an offer to settle or has denied the claim").

Nor can the Semlers assert they relied on AIGPCC's statement that it would review new information regarding the "design services" invoice as a basis for sitting on their rights. First, Oregon law expressly bars considering AIGPCC's facilitation or investigation of claims for coverage as a basis for estoppel. ORS 742.056. Second, AIGPCC told the Semlers what *existing* supporting documents— design drawings or reports generated by the designer and a more detailed explanation of services render—might impact its coverage determination. (Spinella Decl. ¶ 11, Ex. 8 at 1.) A fact-finder could not reasonably interpret that information to mean the Semlers were free to submit and contest claims for coverage indefinitely. *See Herman*, 928 P.2d at 134 ("justified reliance" in support of estoppel "must be reasonable"). Third, when the Semlers demanded new coverage in 2017, they did not present any new documentation to support the "design services" claim. Instead, they presented a lump-sum quote for remodel, notwithstanding AIGPCC's unambiguous statement that "we have paid what we owe for the structure repairs."

In short, even if there were grounds for estoppel and tolling of the ORS 742.240 period prior to November 3, 2014, AIGPCC's correspondence and payment eliminated any possible

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200

misunderstanding of AIGPCC's position—it owed no further coverage. The Semlers' ORS 742.240 time to sue began to run no later than November 3, 2014, and the time to sue expired on November 3, 2016. Accordingly, the Court should grant summary judgment to AIGPCC and dismiss this suit with prejudice.

## VI. CONCLUSION

For the reasons set out herein, no material dispute of fact exists and AIGPCC is entitled to judgment as a matter of law. The Court should therefore grant this motion and dismiss the Semlers' suit with prejudice.

DATED: July 20, 2018

LANE POWELL PC

By s/ Hans N. Huggler
Hans N. Huggler, OSB No. 144993
Telephone: 503.778.2100
Facsimile: 503.778.2200
Attorneys for Defendant

**LANE POWELL PC**
601 SW SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204-3158
503.778.2100 FAX: 503.778.2200