**Kyle A. Sturm, OSB 080214**
kyle@foremansturm.com
**Nicholas A. Thede, OSB 075460**
nick@foremansturm.com
FOREMAN STURM & THEDE LLP
P.O. Box. 13098
Portland, Oregon 97213
T: 503.206.5824

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DR. HERBERT SEMLER and SHIRLEY SEMLER, individuals,<br><br>    Plaintiffs,<br><br>    v.<br><br>CHARTIS PROPERTY CASUALTY COMPANY, a Pennsylvania company,<br><br>    Defendant. | Case No. 3:18-cv-00624-AC<br><br>DECLARATION OF DR. HERBERT SEMLER |

I, Dr. Herbert Semler, declare as follows:

1. I am over the age of 18 and am otherwise competent to testify in a court of law to the matters addressed herein. I make this declaration based on my personal knowledge.

2. Since 1983, my wife and I have owned the home located at 1808 N Ocean Avenue, Gearhart, Oregon. It was constructed in 1941 and was one of the few residential structures designed by world-renowned architect Pietro Belluschi. It is one of a kind. The 3,386 square-foot home includes five bedrooms and three-and-a-half bathrooms and sits on a 3.83-acre lot.

Page 1     DECLARATION OF DR. HERBERT SEMLER

3. On June 5, 2012, a cracked supply line in an upstairs bathroom at the home caused damage to the upstairs bathroom, along with the kitchen and pantry located below it. The leak was discovered by our housekeeper, who has attended to the home for years and checked on it regularly. We notified Chartis of the loss the following day. I was the primary contact and handled matters relating to the claim.

4. Shortly after the loss in June 2012, I met with Chartis's insurance adjuster at our home, along with a contractor we were working with at the time. That contractor was not retained to perform the repair work.

5. In late June 2012, I accepted a payment from Chartis on our claim as an initial advance on our claim. However, I did not believe this payment would be sufficient to repair the damage to the home. At the time I accepted the payment from Chartis, I was not aware of and had not been informed of any time-period for asserting any legal rights under the policy.

6. I was not able to communicate with Chartis between July 2012 and April 2014 because I was suffering from a life-threatening health condition. I am currently 89 years old and will turn 90 on August 30th. I also was not able to put any effort into retaining contractors to provide estimates for the damage, proceed with the repair work, or follow-up with Chartis or perform any activities with respect to the claim.

7. I retained the services of Angela Danadjieva, a protégé of Pietro Belluschi, to perform design work relating to the anticipated repairs to the home. In the spring of 2014, I directed Rosana Carr to submit Ms. Danadjieva's invoice. I directed Ms. Carr to submit the invoice on the belief that Chartis was willing to accept and consider additional information relating to the claim and to pay for it and because I was not aware of any time limitations imposed by the policy.

8. I met with Chartis's adjuster at the home later in April 2014 to discuss the claim. I recall that at that meeting we discussed payment of Ms. Danadjieva's invoice, selection of a new contractor to perform the repairs, and payment for damage to contents and spoiled food items.

9. I spoke with the Chartis adjuster again in June 2014 to discuss the claim. I recall that we talked about selection of a contractor and coverage for additional living expenses, which I do not recall discussing prior to that meeting.

10. During the summer of 2014, I began working with Greg Larson Construction ("Larson") and requested he provide an estimate for the cost to repair the home.

11. I also gathered and provided a number of receipts for meals that I believe should be covered under the insurance policy. I provided those receipts to Ms. Carr and asked her to submit them to Chartis as part of the claim.

12. I met with the insurance adjuster again in August 2014. I recall that we inspected the home with Larson, and discussed issues concerning contents, spoiled food items, and the additional living expenses claim. Although we were making some progress, I did not come to an agreement with Chartis regarding the amount it owed on the claim.

13. In October 2014, I accepted an additional payment on the claim from Chartis. I did not believe that this payment from Chartis was sufficient to perform the repairs on the home or otherwise resolve the claim. At the time of this payment, I had not been informed by Chartis that my claim was closed or that there were any time limitations on filing a lawsuit. Based on the correspondence we received from Chartis, I continued to believe that it would continue to accept and consider additional information, adjust our claim, and issue further payments.

14. Between November 2014 and July 2017, I was again dealing with a serious, life-threatening illness. As a result of that illness, I was not able to pursue the claim during this period.

15. In the summer of 2017, I contracted with Tim Beatty Builder & General Contractor ("Beatty") to prepare a proposal to perform the repair work on the home. I asked Ms. Carr to submit the proposal to Chartis. I sought out and contracted with Beatty because I believed Chartis was willing to accept, consider, and pay the invoice as part of its adjustment of the claim.

16. At the end of July 2017, I again met with Chartis's adjuster at the home. We conducted a walk-through of the home with Beatty and he provided more information to the adjuster.

17. Following that meeting, Chartis informed me for the first time that it would not pay any more on the claim. Also, for the first time, it notified me of the time limitation on filing a lawsuit regarding the claim. After receiving Chartis's denial, I directed Ms. Carr to convey that we disagreed with the denial and to invoke the right to appraisal.

18. I was never represented by an attorney during the claim process with Chartis. I engaged the attorneys that are representing me in this case in or about December 2017. At my direction, they filed this lawsuit on April 13, 2018. I never agreed that any of the payments issued by Chartis were sufficient to resolve the claim. I did not initiate a lawsuit against Chartis earlier in the claims process because I believed, based on the correspondence with Chartis, that the claim remained until I received the final denial letter that was dated August 24, 2017. I believe I would have complied with the suit limitation provision if I had been informed of it earlier in the claim process. I continued to spend time and money throughout the claims process because I believed the claim remained open, that additional payment would be made on the claim, and Chartis continued to accept and consider all information we submitted in support of the claim.

19. Because Chartis refused to proceed with appraisal or issue any additional payments, I proceeded with repairing the home at my own cost. Beatty completed the repairs in June 2018 for the cost contained in the document submitted to Chartis in July 2017.

20. I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge.

DATED this 10th day of August, 2018.

 

**Dr. Herbert Semler**

19. Because Chartis refused to proceed with appraisal or issue any additional payments, I proceeded with repairing the home at my own cost. Beatty completed the repairs in June 2018 for the cost contained in the document submitted to Chartis in July 2017.

20. I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge.

DATED this 10th day of August, 2018.

*Herbert Semler*
**Dr. Herbert Semler**

Page 5    DECLARATION OF DR. HERBERT SEMLER