**David M. Schoeggl**, OSB No. 050317
schoeggld@lanepowell.com
**LANE POWELL** PC
1420 5th Avenue, Suite 4200
PO Box 91302
Seattle, Washington  98101
Telephone: 206.223.7383
Facsimile: 206.223.7107

**Hans N. Huggler**, OSB No. 144993
hugglerh@lanepowell.com
**LANE POWELL** PC
601 SW Second Avenue, Suite 2100
Portland, Oregon 97204-3158
Telephone: 503.778.2100
Facsimile: 503.778.2200

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **DR. HERBERT SEMLER and SHIRLEY SEMLER, individuals,** | Case No. 3:18-cv-00624-AC |
| Plaintiffs, | Defendant Chartis Property Casualty Company's |
| v. | REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| **CHARTIS PROPERTY CASUALTY COMPANY, a Pennsylvania company,** | |
| Defendant. | |

# I. **INTRODUCTION**

AIG Property Casualty Company ("AIGPCC," formerly known as Chartis Property

Casualty Company) is moving for summary judgment because Herbert and Shirley Semler's suit

PAGE 1 -    REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

is time-barred under the suit limitation provision in the parties' insurance contract. (*See* Declaration of Kathleen Spinella ("Spinella Decl.") Ex. 1 (the "Policy").) In opposition, the Semlers argue that AIGPCC's communication with them in October and November 2014 did not adequately convey that AIGPCC considered their claim resolved, and that AIGPCC's subsequent conduct warrants estopping it from relying on the suit limitation provision. The Court should reject these arguments as contrary to the law and the facts. In November 2014, using plain and unambiguous language, AIGPCC communicated that it owed nothing further on the Semlers' claims. Moreover, the Semlers cannot support even one of the elements necessary to estop AIGPCC from relying on the suit limitation provision. Accordingly, the Court should grant summary judgment to AIGPCC and dismiss this suit with prejudice.

## II. <u>ARGUMENT</u>

**A.      There Are No Material Disputes of Fact, and the Semlers' Additions to the Record are Immaterial to the Issues Before the Court.**

The parties' briefs and evidence show agreement on the material facts as to cause of the Semlers' loss, the timeline of AIGPCC's adjustment and payment of the Semlers' claims, and the written communications between the parties. Critically, the Semlers do not dispute that from November 2014 to July 2017—a period of two years and seven months—they did not communicate with AIGPCC in any way. (Spinella Decl. ¶ 13; Declaration of Herbert Semler ("Semler Decl.") ¶ 14.) This undisputed fact, in combination with AIGPCC's closing communications to the Semlers in 2014, is dispositive.

The Semlers do introduce testimony in a few areas that is both disputed[1] and *immaterial* to the claims at issue. First, Herbert Semler offers testimony as to his subjective understanding that "based on the correspondence we received from [AIGPCC], * * * it would continue to accept and

---

[1] Because the parties agreed to resolve the preliminary issue of the suit limitations by motion before engaging in discovery, neither party has conducted depositions in this matter or engaged in discovery beyond AIGPCC's production of its claim file. Accordingly, AIGPCC has not yet had the opportunity to examine Herbert Semler as to the assertions made in his declaration, and reserves its right to challenge his testimony in later proceedings.

PAGE 2 -      REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

consider additional information, adjust our claim, and issue further payments." (Semler Decl. at ¶ 13; *id.* ¶ 18.) However, to raise an issue of fact regarding estoppel, the Semlers must present evidence on which an objectively reasonable fact-finder could conclude that AIGPCC made "false representations or affirmatively induced" the Semlers "to delay in bringing [this] action." *Herman v. Valley Ins. Co.*, 928 P.2d 985, 991 (Or. Ct. App. 1996). Thus, the only relevant communications and conduct for estoppel purposes are those from AIGPCC. Herbert Semler's subjective understanding is simply not relevant to that inquiry. *Cf. Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (a "non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment"). Moreover, even if accepted, Mr. Semler's statements do not identify any false representations or affirmative inducements by AIGPCC that could support an estoppel claim.

Further, Herbert Semler testifies that the Semlers' extended periods of non-communication and years of delays in repairing their home were the result of his periods of an unspecified, life-threatening illness. (Semler Decl. ¶¶ 6, 14.) There is no evidence that AIGPCC was aware of Herbert Semler's illness, no explanation for why Mr. Semler's spouse, lawyer, or other representative could not have pursued the Semlers' claims during Herbert's alleged illnesses, and no mention of the illness in the Semler's legal arguments. Herbert Semler's testimony as to his illnesses are not material to the issues before the Court and should be disregarded.

**B.    The Semlers Fail to Address the Impact of ORS 742.240, Conceding That Summary Judgment is Warranted if the Statutory Language Applies.**

AIGPCC moves for summary judgment because this suit is barred by the suit limitation provision contained in the Policy. *Which* suit limitation is applicable—the as-written provision or the provision mandated by ORS 742.240 and required to be "read in" to noncompliant policies— is a question of law that requires resolution by the Court. (*See* AIGPCC Br. at 11.) *Olson v. Nat'l Indemnity Co.*, 829 P.2d 716, 717 (Or. Ct. App. 1992) (requiring courts to "read in" ORS 742.240 language when policies are non-compliant).

PAGE 3 -    REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Semlers raise no arguments against the application of ORS 742.240's prohibition on suits filed more than two years after the date of loss.  (*See* Semler Br. at 12 (premising all arguments on application of the Policy's as-written provision).)  Accordingly, if the Court determines that ORS 742.240's limiting language must be "read in" to the Policy, the Semlers' claims are time-barred, AIGPCC is entitled to judgment as a matter of law, and the Court should grant summary judgment to AIGPCC and dismiss this suit with prejudice.

**C.    The Court Should Follow the Analysis of the Policy's Limitations Clause in *Majagah*, Hold That the Semlers' "Amount of Loss" was "Determined" on November 3, 2014, and Apply the as-written Suit Limitation Provision to Bar this Suit.**

Even if the Court determines that the as-written suit limitation in the Policy is controlling rather than the statute, summary judgment should still be granted.  The key question for purposes of the as-written limitation is on what date the Semlers' "amount of loss" was "determined" and the suit limitation period began to run.  AIGPCC cites to *Majagah v. AIG Prop. Cas. Ins. Agency, Inc.*, 2016 WL 475362, *3 (D. N.J. Feb. 8, 2016), wherein the District of New Jersey interpreted the same suit limitation provision that is in the Policy and held that the "amount of loss" is "determined" when the insurer either denies coverage or communicates settlement of the insured's claim.  Here, the undisputed facts support no conclusion except that AIGPCC communicated its final settlement to the Semlers on November 3, 2014—the date AIGPCC plainly stated it had paid what it owed on the Semlers' claim.  The Court should adopt the reasoning in *Majagah* to conclude that the Semlers' suit is time-barred.

The Semlers suggest that because New Jersey applies the "reasonable expectations test" in interpreting insurance contracts and Oregon applies the interpretive framework set out in *Hoffman Construction*, this Court should reject *Majagah*'s conclusion and instead adopt the Semler's definition that "the amount of loss has not been 'determined' when there is continuing investigation or negotiation on the issue." (Semler Br. at 15.)  But in doing so, the Semlers ignore both Oregon's approach to interpreting insurance contracts and the holding in *Majagah* that the term "determined" is not ambiguous.  The Court should not make the same error.

PAGE 4 -        REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

In *Hoffman Construction*, the Oregon Supreme Court established a multi-part framework for interpretation of the intention of parties to an insurance contract. *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Oregon*, 836 P.2d 703, 706 (Or. 1992). In the event of a dispute as to the meaning of an insurance provision, courts must first determine if the disputed term is "ambiguous." Theoretical ambiguity is not enough—the *Hoffman* court recognized that skilled lawyers can manufacture ambiguity from virtually any phrase. *Id.* Rather, "a term is ambiguous in a sense that justifies application of the rule of construction against the insurer *only* if two or more plausible interpretations of that term withstand scrutiny, i.e., continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole. *Id.* (emphasis in original). If the term remains ambiguous, it is then subject to being construed in favor of the insured's plausible interpretation. *Id.*

*Majagah*'s analysis of the suit limitation fits neatly into the Oregon framework. The *Majagah* court held that "this Court does not find the limitation provision to be ambiguous." 2016 WL 475362 at *3. The court explained that:

> [a]lthough the policy does not define when the amount of loss has been determined, the only reasonable interpretation is that the loss has been determined at the point when the insurance company has made an offer to settle or has denied the claim. This understanding of the limitation provision is reasonable insofar as it provides Defendant with an opportunity to determine the amount of any covered loss to the insured before a lawsuit may be filed, while also allowing the insured a full twelve months in which he or she could file a lawsuit.

*Id.* (internal citations and quotation marks omitted). Under the Oregon framework, the Court can and should reach the same conclusion. While the term "determined" is not defined in the Policy, it is not ambiguous. Rather, within the context of a homeowners' policy, its only reasonable interpretation is that a loss is 'determined" when AIGPCC either (1) denies coverage or (2) communicates that it has settled the claim and owes nothing further. At that point, the insured's

PAGE 5 -    REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

time to sue starts to run.  Here, AIGPCC did just that in November 2014, and the Semlers' time to sue started then and expired in December 2015.

The Semlers suggest an alternative but unsupported definition of "determined"—that "the amount of loss has not been 'determined' when there is continuing investigation or negotiation on the issue."  (Semler Br. at 15.)  AIGPCC does not concede the Semlers' definition, which imports new ambiguities as to what constitutes "investigation" or "negotiation," terms that do not appear in the Policy and should not be read into it.  But even applying the Semlers' definition, their case fails on the facts.  There is no evidence of any "negotiation" or "investigation" of the Semlers' claim by AIGPCC between November 2014 and mid-2017, when the Semlers attempted to present new claims for coverage to AIGPCC on the basis of a 2017 quote for remodeling work.  (Spinella Decl. Exs. 9 and 10.)  The Semlers misconstrue AIGPCC's statement in November 2014 that it would "gladly review" information to suggest the Semlers' claim remained open.  But AIGPCC's statement, read in context, refers only to one item on which AIGPCC had denied coverage—the invoice for "design services" that AIGPCC determined were unnecessary for repair of the Semlers' beach home.  (*See* Spinella Decl. Ex. 8 at 1.)  To this day, the Semlers have never provided additional information about the design services invoice.  Rather, the Semlers went quiet for two and a half years, only to emerge with a new claim in 2017 seeking coverage for extensive remodeling of their home.

The uncontested record of written communications between the parties shows that on November 3, 2014, AIGPCC informed the Semlers that "[w]e have paid what we owe for the structure repairs.  The below amounts would be enough to complete the work to the home to put it back to the condition it was prior to the loss happening."  (Spinella Decl. ¶ 12, Ex. 8 at 1.)  AIGPCC labeled its October 2014 payment a "final supplement check" and referred the Semlers' broker to AIGPCC's "closing letter" with a note that "[w]e believe the settlement is fair."  (Spinella Decl. Exs. 6, 7 at 1, Ex. 8 at 1-2.)  More than two and a half years then passed, during which time AIGPCC considered the claim fully resolved, and the Semlers took no action to suggest they

PAGE 6 -      REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

disagreed.  During this time, AIGPCC was not "investigating" or "negotiating" anything, as it had settled the Semlers' claim.  Moreover, no reasonable juror could find that documents labeled "final supplemental check" and "closing letter" constitute a "false representation" or "affirmative inducement" to the Semlers to disregard the suit limitation provision.  On this evidence, a reasonable fact-finder could only conclude that no "investigation or negotiation" was on-going after AIGPCC "unambiguously and conclusively" informed the Semlers of final settlement of their claim.  (Semler Br. at 15.)  As a result, even under the Semlers' interpretation of the provision, AIGPCC is entitled to judgment as a matter of law.

Finally, the Semlers seek to weaponize AIGPCC's decision to consider and investigate their 2017 submission in good faith by claiming it is evidence of an ongoing "investigation" and "negotiation" during the two and a half year period of silence after AIGPCC issued its 2014 "final supplemental check" and "closing letter."  (Semler Br. at 22.)  This shows the flaw in the Semlers' definition of "determined"—it supposes that an insured can render a suit limitation period meaningless and unenforceable by presenting a new claim for coverage and forcing the insurer to either (1) deny coverage for the new claims with no effort to investigate and expose itself to accusations of breach and bad faith or (2) investigate the new claim in good faith and be found to have waived the suit limitation.  Rather than simply reject the Semlers' claim as stale, AIGPCC did what insurers *should* do when their insured presented with evidence of a potentially covered loss—it investigated the claim thoroughly and made a substantive coverage determination.  (Spinella Decl. Ex. 11.)  No reasonable fact-finder could interpret AIGPCC's good-faith conduct in 2017 as evidence that it considered the Semlers' claims open for the two and a half years prior— particularly when the parties had no contact whatsoever during that period and AIGPCC made clear that its 2017 investigation was not a waiver of its rights under the suit limitation clause.  (Spinella Decl. ¶ 13; *id.* Ex. 12 at 2.)

Finally, the Oregon Legislature definitively weighed on Oregon's policy toward such arguments when it provided by statute that an insurer's investigation of an insured's claims *should*

PAGE 7 -        REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

*not* estop it from relying on limitations provisions. *See* ORS 742.056(3). Plainly, circumstances can arise where an insurer conducts additional investigation of claims for coverage in good faith while expressly preserving its contractual immunity from suit due to a limitation on time to sue. There is no basis, either in the Policy, in Oregon law, or public policy considerations, to present insurers with the Catch-22 suggested by the Semlers, and the Court should reject their invitation to do so.

For all of these reasons and those set out in AIGPCC's motion brief, the Court should hold that the Semlers' "amount of loss" was "determined" on November 3, 2014, their time to sue ran on December 3, 2015, and their current lawsuit must accordingly be dismissed on summary judgment.

**D.    The Semlers Cannot Support Any Element of Estoppel, and the Limitations Provision Therefore Bars This Suit.**

For Oregon courts to estop an insurer from relying on a suit limitation provision:

> there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it.

*Brockway*, 391 P.3d at 876 (quoting *Day v. Advanced M&D Sales*, 86 P.3d 678, 682 (Or. 2004)).

The Semlers argue that AIGPCC should be estopped from relying on the Policy's suit limitation provision because they lacked notice or knowledge of the provision and that AIGPCC's failure to affirmatively notify them of the upcoming deadline in 2015 was misleading. The Court should reject that argument as inconsistent with both the facts and the law, and because the Semlers cannot meet the first element, every subsequent element also fails.

**1.    The Semlers present no evidence that AIGPCC induced the Semlers to disregard the limitation provision, and the Semlers' assertions of ignorance as to the provision contradict Oregon law.** The Semlers assert that they "were not aware that the suit

PAGE 8 -    REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

contained a suit limitation provision" to support their assertion that this Court should eviscerate that provision in their favor.  (Semler Br. at 18.)  The Court should reject this premise.

Contracting parties have a duty to read their contracts and are presumed to be knowledgeable of their contents.  *McGann v. Boyd*, 862 P.2d 577, 579 (Or. Ct. App. 1993) ("A party to an arms-length transaction is presumed to have read the controlling documents."); *Franklin v. Western Pac. Ins. Co.*, 414 P.2d 343, 346 (Or. 1966) ("Under usual circumstances, when one contracts with another, whether it be an insurance contract or otherwise, the contracting parties have an obligation to read the contract and if they assent without so doing, they cannot come into court later and successfully contend that their agreement was different.* * *").  Here, the Policy's suit limitation was available to the Semlers in plain language, under a heading titled "Legal Action Against Us."  (Spinella Decl. Ex. 1 at 18 (Part IV.L).)  There is no evidence whatsoever to suggest that AIGPCC misled the Semlers as to the contents of the Policy or that the provision was otherwise concealed.  The Semlers were able to locate other relevant provisions of their Policy—for example, the appraisal provision that appears directly below the suit limitation— without trouble.  (*See* Spinella Decl. ¶ 17.)  In short, as a matter of law the Semlers had notice of the suit limitation provision and cannot assert otherwise.

The Semlers indisputable obligation to read and know the contents of their Policy is critical to the estoppel analysis, because it resolves the question whether insurers should be held to have waived the suit limitation clause (or any other clause) simply by not specifically calling it to the insured's attention.  Oregon courts rightly require an insured to present evidence of *affirmative*, misleading statements or conduct by an insurer to support estoppel.  *See Lyden v. Goldberg*, 928 P.2d 985, 991 (Or. 1971) ("To invoke the doctrine of estoppel, the * * * insurance company, must have done something that amounted to an affirmative inducement that would cause plaintiff to delay bringing [her] action."); *see, e.g., Brockway v. Allstate Prop. and Cas. Ins. Co.*, 391 P.3d 871, 876 (Or. Ct. App. 2017) ("There is no evidence that Allstate made a misrepresentation to plaintiffs regarding the suit-limitation provision."); *Herman v. Valley Ins. Co.*, 928 P.2d 985, 991

PAGE 9 -        REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

(Or. Ct. App. 1996) ("Viewed in the light most favorable to plaintiff, the record does not show that Valley made any false representations or affirmatively induced plaintiff to delay in bringing her action."); *Kimball v. Horticultural Fire Relief of Or.*, 154 P. 578, 581 (Or. 1916) ("An estoppel always implies a party has been misled to his prejudice, or into an altered position which he would not have taken except for representations relied upon"). Mere silence about any particular policy term that might apply in the future does not support estoppel precisely because the policy itself gives the insured sufficient notice of its contents.[2]

A fundamental principle of contract law is that parties to a contract conduct business on the premise that each has full knowledge of their agreement. For that reason, parties are not obligated to remind their counterparts of contract obligations before seeking to enforce them. Instead, estoppel law requires one party to affirmatively induce the other to act in disregard of their rights. The Semlers do not identify a single fact in the record to show that such an *affirmative* inducement occurred. Instead, they point to AIGPCC's purported violation of an inapplicable Oregon regulation to support their estoppel theory. As explained below, that argument is not supported by the facts or law. The Semlers have not presented evidence of a misrepresentation by AIGPCC, and without such a misrepresentation each subsequent element of estoppel is likewise unsupported. Therefore, the Court should grant summary judgment to AIGPCC and dismiss this suit with prejudice.

      **2.      AIGPCC did not violate Oregon regulations requiring notice to policyholders of suit limitations when settlement negotiations are continuing because negotiations were not continuing after November 2014.** The Semlers argue that because AIGPCC had a "duty to speak" as to the suit limitations provision pursuant to Oregon regulations, AIGPCC should be estopped for asserting that provision here.

---

[2] AIGPCC acknowledges that *misleading* silence in the face of inquiry can constitute conduct to support estoppel. There is no evidence that the Semlers ever inquired about or sought tolling or a waiver of the suit limitation provision.

PAGE 10 -     REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

OAR 836-080-0235(6) provides:

> If an insurer continues negotiations for settlement of a claim directly with a claimant who is neither an attorney nor represented by an attorney until the claimant's rights may be affected by a statute of limitations or policy time limit, the insurer shall give the claimant written notice that the time limit may be expiring and may affect the claimant's rights. The notice shall be given to first party claimants not less than 30 days before, and to third party claimants not less than 60 days before, the date on which the insurer believes the time limit may expire.

AIGPCC did not violate this regulation. The as-written contractual limitations period began to run once AIGPCC settled the Semlers' claim in late 2014. AIGPCC was not "continuing negotiations" a year later—the claim was settled with no protest from the Semlers, who at that point had not contacted AIGPCC in a year. Accordingly, the regulation did not require AIGPCC to notify the Semlers of the impending deadline to sue over a closed claim that had no open issues and no activity.

        **3.     Even if AIGPCC violated the Oregon regulation (and it did not), as a matter of law violation cannot be the basis for estoppel of AIGPCC's right to invoke the suit limitations provision.** Although the Semlers cite *Johnson v. Kentner* elsewhere in their brief (*see* Semler Br. at 16), they do not apprise the Court that in that case the Oregon Court of Appeals considered the exact argument they now make as to OAR 836-80-235(6) and rejected it. There, the Court of Appeals held:

> As an alternative position, plaintiff argues that estoppel may be premised upon the insurer's alleged failure to comply with [OAR 836–80–235(6)]. [3]
>
> [OAR quotation omitted]
>
> We reject that argument. The purpose of that rule is "to define certain minimum standards the violation of which will be considered to constitute unfair claims settlement practices within the purview of ORS 746.230." OAR 836–80–205(2). It is not intended "in any way [to] expand or limit or otherwise change the procedural or substantive rights, or both, of claimants as provided in Oregon

---

[3] The *Johnson* opinion cites the relevant provision as OAR 836-80-235(5), which was subsequently renumbered.

PAGE 11 -    REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

> Revised Statutes." OAR 836–80–205(4). If the insurer has failed to give the notice contemplated by OAR 836–80–235[(6)], it may have committed an unfair trade practice, but the appropriate penalty for that violation has been provided under ORS 731.988. To permit noncompliance with OAR 836–80–235[(6)] to be invoked as a basis for an estoppel not only would enlarge plaintiff's rights, but essentially would create a judicial remedy not contemplated within the statutory scheme. We decline to do so.

71 Or. App. 61, 74 (1984). The undisputed facts show that AIGPCC did not violate Oregon regulations regarding notice of limitations periods. And even if the Court finds a dispute of fact on that point, that dispute is not relevant to whether the pending motion should be granted, given that a violation of OAR 836-80-235(6) cannot be a basis for estoppel under binding Oregon law.

## III.  CONCLUSION

For the reasons set out in AIGPCC's Motion for Summary Judgment and herein, the Court should hold the Semlers' claims barred by the applicable limitations provision contained in their Policy and should dismiss this suit in its entirety with prejudice.

DATED:  August 24, 2018

LANE POWELL PC

By   s/ Hans N. Huggler
    Hans N. Huggler, OSB No. 144993
    Telephone: 503.778.2100
    Facsimile: 503.778.2200
Attorneys for Defendant

PAGE 12 -     REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT